IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERIFACTORS FINANCIAL
GROUP, LLC,

       Plaintiff,

v.

WINDSTREAM SUPPLY, LLC,

       Defendant.

_____/

CASE NO. _____

## COMPLAINT

Plaintiff, Amerifactors Financial Group, LLC ("Amerifactors"), sues Defendant, Windstream Supply, LLC ("Windstream"), and alleges:

1.     This is an action for damages in which the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  It is brought within this Court's diversity jurisdiction pursuant to 28 U.S.C. §1332.

2.     Amerifactors is a Delaware limited liability company.  Its members are all citizens of the state of Florida.  It is authorized to do business in Florida and maintains its principal place of business in Celebration, Osceola County, Florida.

3.      Windstream is an Ohio limited liability company.  Its members are all citizens of the state of Arkansas.  It is authorized to do business in Florida and maintains its principal place of business in Little Rock, Arkansas.

4.      Hal-Tec Construction, Inc. ("Hal-Tec") is a Florida corporation with its principal place of business in Tampa, Hillsborough County, Florida.

5.      Jurisdiction is proper pursuant to 28 U.S.C. §1332.

6.      Venue is proper pursuant to 28 U.S.C. §1391.

## COUNT I – BREACH OF CONTRACT

7.      Amerifactors realleges the allegations contained in paragraphs 1 through 6 above.

8.      Effective January 1, 2009, Hal-Tec, as contractor, entered into a Master Contractor Agreement for Network Services with Windstream (the "Master Contractor Agreement").  A copy of the Master Contractor Agreement is attached as **EXHIBIT 1**.

9.      Pursuant to the terms of the Master Contractor Agreement, Hal-Tec was required to purchase all materials required to complete Hal-Tec's work under the Master Contractor Agreement from Windstream.  The Windstream materials were priced substantially above normal market prices for the same material.

10.    Between January 2, 2009, and April 2009, Hal-Tec complied with the Master Contractor Agreement by purchasing materials from Windstream for more than 50 projects that were assigned by Windstream to Hal-Tec pursuant to the Master Contractor Agreement and by performing required services on projects assigned by Windstream.

11.    In early May 2009, Hal-Tec and Windstream mutually, orally agreed to terminate the Master Contractor Agreement.  Pursuant to the terms agreed to by Hal-Tec and Windstream, Hal-Tec was to be afforded 90 days (through July 31, 2009) within which to complete Hal-Tec's then open Windstream projects in order to afford Hal-Tec the opportunity to utilize and deplete the project inventory that had previously been purchased by Hal-Tec from Windstream pursuant to the terms of the Master Contractor Agreement.  Windstream was to accept and pay for the work to be performed by Hal-Tec in the 90 day period, as well as to pay for work already performed by Hal-Tec.  A copy of Windstream's termination letter confirming the parties' oral agreement is attached as **EXHIBIT 2**.

12.    Rather than affording Hal-Tec the agreed 90 days within which to complete its then open projects, on or about May 11, 2009, Windstream breached the parties' oral, mutual termination agreement by terminating Hal-Tec as the

contractor assigned on more than 30 Windstream projects and by reassigning those projects to a different contractor.

13.    As a direct and proximate result of Windstream's breach and premature termination of the Hal-Tec/Windstream relationship, Hal-Tec was left with a substantial amount of inventory that it had purchased from Windstream to complete the previously assigned Windstream projects.

14.    After Windstream's breach and premature termination, Windstream offset its charges for the inventory sold to Hal-Tec from accounts that were otherwise due to Hal-Tec from Windstream, Windstream negotiated with and settled claims from Hal-Tec's unpaid subcontractors and materialmen and offset those settlements from accounts that were otherwise due to Hal-Tec from Windstream, and Windstream failed and refused to accept the return of the Hal-Tec material inventory that had been purchased by Hal-Tec from Windstream to complete work on the Windstream projects.

15.    Windstream's breach and premature termination of the parties' contractual relationship and Windstream's unauthorized and unjustified offsets claimed against accounts due for Hal-Tec's prior work on Windstream's projects caused Hal-Tec to suffer damages of $506,720.12, the amount of accounts due from Windstream at the time of Windstream's breach.

16.     On or about November 2, 2006, Amerifactors Financial Group, Inc., and Hal-Tec entered into a factoring agreement, by the terms of which Amerifactors Financial Group, Inc., agreed to purchase certain accounts of Hal-Tec.  In 2007, Amerifactors Financial Group, Inc., assigned all of its rights in and to the Hal-Tec agreement to Amerifactors, which continued to purchase Hal-Tec accounts thereafter.  A copy of the Amerifactors/Hal-Tec Factoring Agreement in effect on January 1, 2009 and at all times thereafter through the date of Windstream's breach and premature termination of the Hal-Tec/Windstream relationship is attached as **EXHIBIT 3** (the "Factoring Contract").

17.     At or about the time of Windstream's breach and premature termination of the Hal-Tec/Windstream relationship, Amerifactors owned all or substantially all of the unpaid Windstream accounts, which Amerifactors had purchased from Hal-Tec pursuant to the Factoring Contract.

18.     Prior to the filing of this suit, and pursuant to its status as a secured creditor of Hal-Tec, Amerifactors acquired, by assignment, any and all additional rights of Hal-Tec against Windstream including all claims for breach of the Master Contractor Agreement and the oral, mutual termination agreement.

19.     All conditions precedent to this action have been performed or have occurred.

WHEREFORE, Amerifactors Financial Group, LLC demands judgment for damages against Windstream Supply, LLC, plus interest and costs.

## COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

20.     Amerifactors realleges the allegations contained in paragraphs 1 through 6 and 8 through 19 above.

21.     The Master Contractor Agreement expressly states in paragraph 11(d) that: "upon termination of this Agreement, Windstream may request contractor to pick up, transport and return to a place of storage designated by Windstream any unused materials contractor purchased from Windstream at Windstream's Affiliate cost.  Contractor may invoice Windstream for such materials as if utilized under this Agreement."

22.     The Master Contractor Agreement further states in paragraph 34(b) that: "Upon any termination or suspension of this Agreement as herein provided, Contractor shall: … transfer and deliver to Windstream, in the manner and at the time directed by Windstream, all of its right, title and interest in and to completed and uncompleted work, supplies, materials … and all other property produced as a part of or acquired in connection with the performance of Contractor's obligations under this Agreement and the PSAs;"

23.    After Windstream's breach and premature termination of the Master
Contractor Agreement, Windstream breached the agreement by failing to direct
Hal-Tec to return the materials purchased by Hal-Tec to complete its projects or, in
the alternative, by attempting to impose impermissible, inequitable, and unfair
terms for the return and payment for those materials.

24.    The Master Contractor Agreement included an implied duty of good
faith and fair dealing related to the performance of its terms.

25.    Windstream breached the Master Contractor Agreement and its
implied duty of good faith and fair dealing by prematurely terminating the Master
Contractor Agreement without permitting Hal-Tec 90 days to complete its projects
for Windstream and thereby utilize the inventory previously acquired by Hal-Tec
from Windstream and by, at the same time, refusing to accept the return of that
inventory or seeking to impose impermissible, inequitable, and unfair terms for the
return and payment for those materials.

26.    As a direct and proximate result of Windstream's breach of its implied
duty of good faith and fair dealing, Hal-Tec suffered damages including, but not
limited to, the cost of the inventory purchased by Hal-Tec to complete work for
Windstream that it was unable to utilize on Windstream's projects, and the cost of
continued storage of that material after premature termination by Windstream.

WHEREFORE, Amerifactors Financial Group, LLC demands judgment for damages against Windstream Supply, LLC, plus interest and costs.

CHARLES C. LANE
Florida Bar Number 284467
LAU, LANE, PIEPER,
CONLEY & McCREADIE, P.A.
Post Office Box 838
Tampa, Florida  33601-0838
Telephone 813/229-2121
Facsimile 813/228-7710
Email:  clane@laulane.com
Attorneys for Plaintiff,
Amerifactors Financial Group, LLC

#1216-11175