IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

AMERIFACTORS FINANCIAL GROUP LLC                    PLAINTIFF

v.                            No. 4:12-cv-202-DPM

WINDSTREAM SUPPLY LLC                              DEFENDANT

## ORDER

Windstream moves to dismiss Amerifactors's complaint pursuant to
Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). *Document No. 19.* The
Court accepts the pleaded facts as true and views them in the light most
favorable to Amerifactors. *Great Rivers Habitat Alliance v. Federal Emergency
Management Agency*, 615 F.3d 985, 988 (8th Cir. 2010). But the burden of
proving federal jurisdiction remains with Amerifactors. *Ibid.* The grounds for
Windstream's motion are these: (1) Amerifactors lacks standing to sue; (2)
there is no stand-alone cause of action in Arkansas for violating an implied
covenant of good faith and fair dealing; (3) Amerifactors's claims are barred
by *res judicata*; and (4) Amerifactors has failed to plead facts sufficient to state
a viable cause of action.

**1. Standing.** Amerifactors is the twice-removed assignee of Hal-Tec.
Windstream's two threshold attacks on the assignment fail. Accepting the

pleaded facts as true, Amerifactors Financial Group, Inc. received the assignment from Hal-Tec, then the Amerifactors corporation assigned its rights to Amerifactors LLC.   And in the Hal-Tec/Amerifactors Inc. 2007 assignment, which was part of a factoring agreement, Hal-Tec agreed to "sell and assign to [Amerifactors] all of [its] right, title, and interest in and to all [its] Accounts . . . whether now existing or that may hereafter arise, that are acceptable[.]" *Document No. 1-3, at 2.* This forward-looking assignment covers the disputed Windstream contract.  Now to the main standing issue.

Hal-Tec entered into a construction agreement with Windstream in January 2009.  This contract contained clauses prohibiting assignment of its contract without Windstream's approval and limiting enforcement of the contract to Hal-Tec and Windstream or their "permitted successors and assigns[.]"* In May 2009, Hal-Tec and Windstream decided to terminate the

---

*The relevant contract provisions read as follows:

**32.    Assignment.**
Contractor shall not assign, transfer or subcontract this Agreement or any part thereof, or enter into any agreement with any person, firm or corporation for performance of Contractor's obligation hereunder, or any part of such obligations, without the prior written approval of Windstream.

**38.    Miscellaneous**.
i)      <u>No Third Party Beneficiary</u>.  This Agreement is entered into by and beween, and may be enforced only by, the Parties, and this

construction contract, and came to an oral agreement about certain termination terms. In this case, Amerifactors, as Hal-Tec's assignee under the original contract and the oral termination agreement, alleges that Windstream violated these agreements and its implied covenant of good faith and fair dealing. Windstream argues that Amerifactors lacks standing to sue because Windstream's agreement with Hal-Tec specifically prohibited this type of assignment.

Arkansas law is murky on this point. The Arkansas Supreme Court has made no governing holding. The Court therefore "must make an 'Erie-educated guess' when the law of the forum state is not crystal clear." *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010). Amerifactors

---

Agreement shall not be deemed to create any rights in third parties (other than the Parties' permitted successors and assigns and any persons, entities and enterprises entitled to indemnity hereunder), including suppliers and customers of a Party, or to create any obligations of a Party to any such third parties.

points the Court toward the Restatement (Second) of Contracts § 322.** That

section reads as follows:

> (1) Unless the circumstances indicate the contrary, a contract term
> prohibiting assignment of 'the contract' bars only the delegation
> to an assignee of the performance by the assignor of a duty or
> condition.
>
> (2) A contract term prohibiting assignment of rights under the
> contract, unless a different intention is manifested,
>
>> (a) does not forbid assignment of a right to damages for
>> breach of the whole contract or a right arising out of the
>> assignor's due performance of his entire obligation;
>>
>> (b) gives the obligor a right to damages for breach of the
>> terms forbidding assignment but does not render the
>> assignment ineffective;
>>
>> (c) is for the benefit of the obligor, and does not prevent the
>> assignee from acquiring rights against the assignor or the
>> obligor from discharging his duty as if there were no such
>> prohibition.

RESTATEMENT (SECOND) OF CONTRACTS § 322.

---

** The Arkansas Court of Appeals has cited this Restatement section in two cases. *Communications Distribution Corp. v. SCC Holdings Corp.*, No. CA04-1141, 2005 WL 1112187 (Ark. Ct. App. 11 May 2005); *Sloan v. Tribble*, No. CA96-1266, 1997 WL 573349 (Ark. Ct. App. 10 Sept. 1997) (Roaf, J., concurring). These unreported opinions point in opposite directions; but they have no precedential value and "shall not be cited, quoted, or referred to by any court[,]" with limited exceptions not applicable here. ARK. SUP. CT. R. 5-2(c).

The Court concludes that the Arkansas Supreme Court would apply the Restatement if faced with the facts alleged here, particularly in light of an old line of cases starting with *Garetson-Greason Lumber Co. v. Home Life & Accident Co.*, 131 Ark. 525, 199 S.W. 547 (1917). There, the Arkansas Supreme Court held that "[n]otwithstanding the restricted assignment clause in the [insurance] policy to the effect that the policy should not be assigned without the written consent of the [insurance] company . . . [the insured] had a right to assign its right of action against the [insurer] to whomever it pleased." 131 Ark. at 529, 199 S.W. at 548. *Garetson* applies the rule of law eventually embodied in the Restatement. And we too are dealing with the assignment of contract rights, not contract duties. It is not as if Amerifactors is trying to step into Hal-Tec's place and do the construction work for Windstream.

Hal-Tec assigned its right to sue Windstream for breach of contract to Amerifactors. The Hal-Tec/Windstream construction contract did not explicitly restrict Hal-Tec's *power* to do so. In other words, "[n]o intent is thereby revealed to avoid an assignment not meeting the restrictions." *Cedar Point Apartments, Ltd. v. Cedar Point Inv. Corp.*, 693 F.2d 748, 754 (8th Cir. 1982) (applying Missouri law and citing the Restatement). Thus, the Court

-5-

concludes, viewing the facts in the light most favorable to Amerifactors, that the assignment of Hal-Tec's rights under the agreements was valid. *Ibid.* Windstream, of course, can pursue a claim against Hal-Tec for violating the anti-assignment clause. RESTATEMENT (SECOND) OF CONTRACTS § 322(2)(b). But in this lawsuit, Amerifactors has standing, as Hal-Tec's assignee, to pursue its breach-of-contract claims against Windstream. Alleged injury, causation, and redressability are all present. *Coffey v. Commissioner of Internal Revenue*, 663 F.3d 947, 950 (8th Cir. 2011).

**2. Implied Covenant of Good Faith and Fair Dealing.** Windstream is right that Arkansas law includes no such separate cause of action. *Arkansas Research Medical Testing, LLC v. Osborne*, 2011 Ark. 158, at 6. Instead, "a breach of the implied covenant of good faith and fair dealing remains nothing more than evidence of a possible breach of a contract between parties." *Ibid.* Amerifactors's separate claim for breach of the implied covenant of good faith and fair dealing is dismissed without prejudice. The issue survives as part of the general claims for breach of contract.

**3. *Res Judicata.*** Windstream next argues that *res judicata* bars Amerifactors's claims. *Res judicata* is "an affirmative defense that ordinarily

-6-

must be specifically pleaded[.]" *Sanders v. Department of Army*, 981 F.2d 990, 991 (8th Cir. 1992) (*per curiam*); *see also* FED. R. CIV. P. 8(c)(1). Windstream has not pleaded yet. The rule, however, is not hard and fast: sometimes this defense is considered and resolved on a 12(b) motion. *E.g., In re Sonus Networks, Inc., Shareholder Derivative Litigation*, 499 F.3d 47, 56 (1st Cir. 2007) (John R. Gibson, J., sitting by designation and writing).

As a matter of federal procedure, whether to consider public records, like the Oklahoma court papers advanced by Windstream, is a matter within the Court's discretion. *Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 700–01 (8th Cir. 2003). Exactly what happened in the Oklahoma case is not clear enough, however, for the Court to exercise its discretion and stop this case now. Windstream's motion to dismiss on *res judicata* grounds is therefore denied without prejudice. Windstream should plead *res judicata* as an affirmative defense in its answer and ventilate the defense on summary judgment. This can happen sooner rather than later, and probably should, given what may have happened in the Oklahoma case. The Court needs to know the undisputed material facts to decide whether the Oklahoma judgment bars the door.

**4. Failure to Plead Sufficient Facts.** The Court disagrees with Windstream's characterization of Amerifactors's complaint. It moves beyond bare conclusions and states facts, which, if accepted as true, cross *Iqbal*'s plausibility threshold. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The Court therefore denies Windstream's motion to dismiss on this ground as well.

*   *   *

Motion, *Document No. 19*, denied.

So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

6 July 2012

-8-